**FILED**
September 24, 2026
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: vl
DEPUTY

# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF TEXAS

# SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **VANESSA GUITRON-TORRES,** | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| **AVĒSIS LLC,** | § | |
| Defendant. | § | |
| | § | |
| | § | |
| | | **CIVIL ACTION NO.** SA-26-CV-03081-FB |

## PLAINTIFF'S FIRST AMENDED COMPLAINT

Plaintiff Vanessa Guitron-Torres, appearing pro se, files this First Amended Complaint as a matter of course under Federal Rule of Civil Procedure 15(a)(1)(B) and Western District of Texas Local Rule CV-15 in response to Defendant Avēsis LLC's first Rule 12(b)(6) motion filed September 23, 2026 (Dkt. 10). This amended complaint replaces Plaintiff's prior pleading and states the following claims and facts.

## PARTIES

1. Plaintiff Vanessa Guitron-Torres is an individual residing in San Antonio, Bexar County, Texas. She worked remotely from San Antonio for Defendant Avēsis LLC as a Claims Supervisor beginning June 16, 2025.

2. Defendant Avēsis LLC is an employer within the meaning of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12101 et seq., and employed at least fifteen employees during the relevant period.

## JURISDICTION AND VENUE

3. This Court has federal-question jurisdiction under 28 U.S.C. § 1331 because Plaintiff asserts claims under the ADA.

4. Venue is proper in the Western District of Texas because Plaintiff performed her work from San Antonio, Texas, and a substantial part of the events and effects giving rise to these claims occurred while she worked in this District.

## ADMINISTRATIVE PREREQUISITES AND SCOPE

5. Plaintiff filed EEOC Charge No. 540-2026-02765. The EEOC notified Defendant that the charge arose under the ADA and involved disability, retaliation, and training issues.

6. The EEOC issued Plaintiff a Notice of Right to Sue on April 14, 2026. Plaintiff timely filed this action within ninety days of receiving that notice.

7. This First Amended Complaint addresses the disability-accommodation and ADA-retaliation conduct that occurred before Plaintiff began medical leave on or about February 5, 2026 and that falls within the subject matter of EEOC Charge No. 540-2026-02765. Plaintiff's later August 19, 2026 termination occurred after this lawsuit was filed and is the subject of a separate administrative matter; Plaintiff does not assert a separate termination claim in this First Amended Complaint.

## FACTUAL ALLEGATIONS

8. Plaintiff was hired as a Claims Supervisor. Her responsibilities included supervising staff, quality review, claims operations, reporting, employee coaching, inventory management, audits, appeals, and other supervisory functions. During her employment, she was assigned work

involving dental claims, vision claims, appeals, reporting, Gainwell-related work, refunds and recoupments, and multiple teams.

9. Plaintiff was qualified for the Claims Supervisor position and was able to perform its essential functions with reasonable accommodation. Company records during the relevant period reflected that some responsibilities, including daily inventory and Gainwell work, were being completed or managed, while Plaintiff repeatedly sought additional training and clarification for other duties.

10. In or around July 2025, Plaintiff disclosed to Human Resources and management that she had Attention Deficit Hyperactivity Disorder (ADHD), Generalized Anxiety Disorder (GAD), anxiety, and related symptoms. Human Resources provided ADA paperwork and initiated an accommodation process.

11. Plaintiff's impairments substantially limited major life activities including concentrating, thinking, communicating, processing information, remembering information, organizing tasks, and working under high-volume and rapidly shifting demands. Among other effects, Plaintiff experienced difficulty maintaining focus across numerous simultaneous tasks, remembering and processing detailed information, and formulating responses when placed under pressure.

12. Defendant knew of these limitations through Plaintiff's communications with management and Human Resources, her ADA requests, and medical documentation. Plaintiff submitted provider-completed ADA documentation during 2025 and returned to her healthcare provider for updated or revised documentation as the accommodation process continued.

13. Plaintiff requested intermittent leave of approximately four days per month for medical appointments, treatment, and disability-related needs, together with reasonable flexibility for medical appointments, treatment, and symptom flare-ups. The request was connected to

recommendations from her medical providers and was not a request for indefinite continuous leave.

14. During the accommodation process, Defendant informed Plaintiff that it would provide only four hours per month rather than the approximately four days per month requested. Four hours per month did not provide the amount of intermittent time Plaintiff had requested for recurring medical appointments, treatment, and disability-related needs.

15. Plaintiff continued communicating with Human Resources and management about her disability, the accommodation request, workload, training needs, and the impact of the work environment on her health. She did not abandon the accommodation process.

16. On August 11, 2025, after Plaintiff had disclosed her medical condition and accommodation needs, her manager stated in writing that the Claims Supervisor role was fast paced, required multitasking, and that management could not remain on one lesson at a time. Plaintiff responded that she was overwhelmed, that her medical condition affected her pace and ability to respond when placed on the spot, and that she believed Human Resources was involved because of her medical condition.

17. Over the following months, Plaintiff alleges that scrutiny of her work increased while her responsibilities expanded. Plaintiff repeatedly reported that she had not received complete training for multiple duties and systems and asked for clarification, structured training, written task lists, and support.

18. On January 27, 2026, management used a formal one-on-one form to document multiple alleged performance deficiencies. The same form also recorded Plaintiff's response that she was managing four different teams or operational areas, had not been fully trained on multiple duties,

had previously disclosed her medical concerns, and was having difficulty speaking up and processing information under pressure.

19. On January 27 and January 28, 2026, Plaintiff participated in ADA-related meetings with Human Resources and leadership. The participants included Aashita Maheshwari, Human Resources; Zac Talbot, Human Resources leadership; and Samuel Winters, a legal representative.

20. During those discussions, Plaintiff attempted to explain her limitations and the support she needed. Plaintiff informed Defendant that her medical conditions made it difficult for her to formulate and articulate responses in real time when she felt pressured or cornered. She requested additional time and assistance in identifying accommodations.

21. Plaintiff did not intend to end or abandon the interactive process. Nevertheless, on January 29, 2026, Human Resources sent a written meeting summary stating that Plaintiff had not identified an accommodation need, had indicated that she wished to end the interactive process, and would be expected to perform all essential functions of the position. Plaintiff disputes that characterization because she had already requested approximately four days per month of intermittent leave and flexibility, had provided medical documentation, and had requested additional time and assistance.

22. On February 2, 2026, Plaintiff again requested training and support for duties she stated she had not been adequately trained to perform, including aspects of appeals, lead duties, inventory, Gainwell work, refund and recoupment work, Workday-related functions, ratings, audits, and other tasks. Plaintiff explained that the volume of assignments and lack of structured training aggravated her disability-related limitations.

23. That same day, Director Adriana Hinojosa responded that training had been completed in multiple areas, stated that no additional training would be scheduled for some items, and advised that Plaintiff would be held to the same performance standards as other supervisors with no exceptions. Plaintiff alleges that this response failed to account for the accommodation process and her known limitations.

24. On February 3, 2026, Plaintiff submitted a formal Complaint and Grievance to company leadership. She expressly complained of discriminatory treatment, disability-related concerns, retaliation, increased pressure and scrutiny, and the effect of the workplace on her mental health. She requested an investigation and corrective action.

25. On February 4, 2026, Michael Scott responded that Avēsis took reports of discrimination, harassment, and inappropriate workplace conduct seriously and had shared Plaintiff's concerns with the appropriate teams. The response also stated that Human Resources was open to re-engaging in the interactive process if Plaintiff requested it.

26. Plaintiff alleges that the need to "re-engage" arose because Defendant had prematurely treated the interactive process as ended even though Plaintiff had an unresolved provider-supported accommodation request and had asked for help articulating additional accommodation needs.

27. By February 5, 2026, Plaintiff's health had significantly deteriorated and she began medical leave. At that time, the requested intermittent accommodation and the dispute regarding the interactive process had not been resolved to Plaintiff's satisfaction.

## COUNT I - ADA DISABILITY DISCRIMINATION / FAILURE TO ACCOMMODATE

28. Plaintiff incorporates the preceding paragraphs as though fully set out here.

29. Plaintiff had actual mental impairments that substantially limited one or more major life activities, including concentrating, thinking, communicating, and working, and Defendant had notice of those impairments and resulting limitations.

30. Plaintiff was a qualified individual who could perform the essential functions of her position with reasonable accommodation.

31. Plaintiff requested specific reasonable accommodations, including intermittent leave of approximately four days per month for medical appointments, treatment, and disability-related needs and flexibility for appointments, treatment, and symptom flare-ups. Plaintiff provided medical documentation and provider-supported information during the accommodation process.

32. Defendant provided only four hours per month rather than the approximately four days per month requested and later treated the interactive process as ended despite Plaintiff's prior request, medical documentation, and request for additional time and assistance. Plaintiff alleges that the four-hour allowance was ineffective for the recurring medical and disability-related needs for which she requested accommodation.

33. Defendant therefore failed to reasonably accommodate Plaintiff's known limitations and failed to complete a meaningful interactive process directed toward identifying an effective reasonable accommodation, in violation of the ADA.

## COUNT II - ADA RETALIATION

34. Plaintiff incorporates the preceding paragraphs as though fully set out here.

35. Plaintiff engaged in activity protected by the ADA by disclosing disability-related limitations, requesting reasonable accommodation, participating in the ADA interactive process, requesting additional assistance, and complaining to Human Resources and company leadership about disability discrimination and retaliation.

36. After and during Plaintiff's protected activity, she alleges that Defendant subjected her to intensified scrutiny and monitoring, formal documentation of alleged performance deficiencies, increased pressure concerning duties she contended she had not been adequately trained to perform, and refusal of additional training or support in areas she had identified as disability-related difficulties.

37. The January 27, 2026 formal performance documentation occurred immediately before the January 27-28 ADA meetings, and the February 2, 2026 refusal of additional training or exceptions was followed the next day by Plaintiff's formal discrimination and retaliation grievance. Plaintiff alleges that these events were part of an escalating pattern that was temporally and factually connected to her accommodation requests and disability-related complaints.

38. Plaintiff alleges that the challenged treatment, considered in context and cumulatively, was materially adverse because it increased the risk of discipline and job loss, placed her under heightened performance pressure while her accommodation needs remained unresolved, and could dissuade a reasonable employee from continuing to request accommodation or complain about disability discrimination.

39. Defendant's conduct therefore constituted retaliation prohibited by the ADA.

## INJURIES AND RELIEF REQUESTED

40. As a result of the conduct alleged above, Plaintiff alleges that she suffered lost income and employment benefits to the extent recoverable, medical and prescription expenses, emotional distress, mental anguish, physical symptoms associated with distress, and other compensable losses. Plaintiff's employment later ended on August 19, 2026. That termination is the subject of a separate administrative matter and is not asserted as a separate claim in this pleading. Since

August 19, 2026, Plaintiff has had no employment income, and her unemployment claim is presently disqualified and under appeal. Plaintiff is experiencing severe financial hardship affecting her ability to meet basic obligations, including her mortgage, vehicle and automobile-insurance expenses, electricity and water bills, medical appointments, laboratory testing, and prescription medication.

41. Plaintiff alleges that her mental and emotional health deteriorated substantially during the events at issue and that the effects continued after she began medical leave. She experienced anxiety, panic symptoms, sleep disruption, difficulty concentrating and processing information, emotional exhaustion, and other symptoms that interfered with daily functioning. Plaintiff sought mental-health evaluation and treatment and has continued psychiatric and behavioral-health care, including therapy and medication management.

42. Plaintiff also alleges significant physical and medical consequences and increased treatment needs. Beginning immediately after her medical leave began, Plaintiff sought care from multiple providers, including a February 6, 2026 evaluation with Ms. Pool, as well as care through her mental-health provider, primary-care provider, gynecologic providers, and other treating professionals. Her subsequent care has included laboratory testing, treatment for anemia-related concerns, gynecologic and hormonal evaluation, hormone-replacement therapy, prescription medication, and recommended physical therapy. Plaintiff alleges that the workplace events and resulting stress caused or aggravated symptoms and increased her need for treatment. Plaintiff will rely on her medical records and appropriate medical evidence to establish the nature, causation, and duration of any medically attributable condition rather than asserting unsupported medical causation.

43. After the loss of employer-sponsored medical coverage, Plaintiff has had to pay healthcare and medication expenses out of pocket and has delayed or gone without recommended care because of cost, including physical therapy and mental-health treatment. She continues to preserve medical records, psychiatric and behavioral-health records, laboratory results, prescriptions, provider recommendations, receipts, and other records documenting these losses and treatment needs.

44. Plaintiff continues to seek replacement employment and to mitigate her losses by applying for jobs and preserving applications, rejection notices, recruiter communications, and employment-search records. Plaintiff alleges continuing professional and employability harm from the loss of her position and the disputed characterization of her separation. Plaintiff does not allege that Defendant caused any specific future job rejection without evidence establishing such a connection.

45. Plaintiff requests all relief authorized by law, including back pay and other lost compensation, front pay or other equitable monetary relief to the extent legally available, compensatory damages, reimbursement of recoverable medical, mental-health, prescription, and related expenses, equitable relief, costs, and any other relief the Court deems just and proper.

## JURY DEMAND

46. Plaintiff demands a jury trial on all issues so triable.

## *PRAYER*

WHEREFORE, Plaintiff Vanessa Guitron-Torres respectfully requests that Defendant be required to answer this First Amended Complaint, that Plaintiff recover the relief authorized by

law on the claims stated above, and that the Court grant all other relief to which Plaintiff may be entitled.

Respectfully submitted,
/s/ Vanessa Guitron-Torres
Vanessa Guitron-Torres
Plaintiff, Pro Se
234 Aldama
San Antonio, Texas 78237
Telephone: (210) 719-1672
Email: vanessagamez15@yahoo.com

## DECLARATION

*I declare under penalty of perjury that the factual statements in this First Amended* Complaint are true and correct to the best of my knowledge and belief. Executed on September 24th, 2026, in San Antonio, Texas.

***/s/ Vanessa Guitron-Torres***
Vanessa Guitron-Torres

Vanessa Guitron-Torres
Vanessa Guitron - Torres

## CERTIFICATE OF SERVICE

I certify that on September 24th, 2026, I served a true and correct copy of Plaintiff's First Amended Complaint on counsel for Defendant Avēsis LLC by email and U.S. Mail on Pamela B. Linberg and Nathaniel J. Higgins, JACKSON LEWIS P.C., 717 Texas Avenue, Suite 1700, Houston, Texas 77002, at Pamela.Linberg@jacksonlewis.com and Nathaniel.Higgins@jacksonlewis.com.

**/s/ Vanessa Guitron-Torres**
Vanessa Guitron-Torres

Vanessa Guitron-Torres
Vanessa Guitron - Torres